UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

ARCHER-DANIELS-MIDLAND COMPANY,

                    Appellant,                    Case No. 17-cv-0313-bhl

     v.

COUNTRY VISIONS COOPERATIVE,
UNITED STATES TRUSTEE,

                    Appellees.

_____

## DECISION AND ORDER

_____

       In this long-pending bankruptcy appeal, Archer-Daniels-Midland Company (ADM) seeks the reversal of a bankruptcy court order that denied ADM's "motion to enforce" an earlier plan confirmation order issued by the same bankruptcy judge. Through its motion, ADM asked the bankruptcy court to enforce a 2011 confirmation order against Country Visions Cooperative (CVC), even though CVC was not a party to the bankruptcy case at confirmation. ADM also requested an injunction that would have prevented CVC from continuing state court litigation related to a right of first refusal (ROFR) on real property that ADM purchased pursuant to the confirmation order. The bankruptcy court denied the motion, concluding that because CVC had not received proper notice of the bankruptcy proceedings, its rights could not be affected by the confirmation order consistent with due process. The court also rejected ADM's alternate theory that it was a "good faith" or "bona fide" purchaser of the property. On March 3, 2017, ADM filed this appeal.

       For the reasons that follow, the bankruptcy court's ruling is affirmed. As an initial matter, the 2011 confirmation order is not binding on CVC because the bankruptcy court did not obtain personal jurisdiction over CVC before confirmation. Moreover, in CVC's absence, the parties to the confirmation proceedings failed repeatedly to comply with bankruptcy rules and procedures protecting CVC's rights, depriving CVC of the process to which it was Constitutionally and statutorily due. The informal notice CVC actually received was insufficient to overcome these procedural failures. Finally, the record shows ADM was not an innocent, bona fide purchaser.

# BACKGROUND

1. **The 2007 Origins of the ROFR**

In 2007, CVC's predecessors, Golden Grain LLC and Agri-Land Co-op, acquired a right of first refusal on a parcel of real estate in Ripon, Wisconsin (the Ripon Property) from Olsen Brothers Enterprises LLP, a limited partnership owned by Paul and David Olsen. The ROFR provided that for a period of ten years, Olsen Brothers Enterprises would give the holder of the ROFR notice and an opportunity to match any third party's written offer to purchase the Ripon Property. In July 2010, Olsen Brothers Enterprises sold the Ripon Property to Paul and David Olsen individually. The parties agreed that this was a permitted transfer that did not trigger the ROFR.[1]

2. **The Olsens' Bankruptcy Cases**

On December 16, 2010, the Olsens and their spouses filed petitions for bankruptcy. They requested, and the bankruptcy court ordered, the joint administration of their cases. Like many chapter 11 bankruptcies, the Olsens' cases began with contentious motion practice and, ultimately, competing reorganization plans. These disputes were resolved through mediation, after which, the Olsens' major creditors filed a consensual, amended plan of reorganization. The agreed-upon plan, and a later Second Amended Plan, provided for the sale of the Ripon Property, along with other real estate, pursuant to a bidding process in which ADM was to serve as the "stalking horse" bidder.

The parties presented the agreed-upon plan to the bankruptcy court in late July 2011 and asked for expedited consideration. Pointing to the impending close of the farming season, they insisted that farmers, and creditors who purchased the farmers' crops, needed the certainty that only an approved sale could provide. Accordingly, with the apparent consent of all interested parties, the bankruptcy court approved a disclosure statement on July 29, 2011 and scheduled a confirmation hearing for August 26, 2011, with objections due two days before the hearing. The bankruptcy court later delayed the hearing to August 30, 2011 and scheduled an auction for the same date.

For reasons that remain unclear, even though CVC had filed its ROFR with the local register of deeds, and its interest would have shown up on a simple title report, none of the parties (including ADM) took steps to ensure that CVC was included on the service list for the amended plan or any of the related motions and hearing notices. CVC learned of the potential sale of the Ripon Property only informally, and only *after* the bankruptcy court had already approved the disclosure statement

---

[1] Golden Grain LLC and Agri-Land Co-op transferred the ROFR to CVC as part of a series of assignments and mergers in 2011. Like CVC, Golden Grain/Agri-Land did not receive formal notice of the bankruptcy sale or attend the confirmation hearing. For purposes of this decision, Golden Grain LLC, Agri-Land Co-op, and CVC will be collectively referred to as CVC except where a distinction among them is relevant.

and set the plan confirmation schedule.

CVC's counsel acknowledged telephoning counsel for one of the major creditors in August of 2011 to ask about the Ripon Property, but did not recall receiving a return call. He also sent a letter to the debtors and their attorney, referring to Olsen Brothers Enterprises' transfer of the Ripon Property to the Olsens and indicating that CVC had received information that the property might be transferred again. Despite CVC's inquiries, none of the parties, including ADM, took steps to ensure that CVC was served with the required bankruptcy notices.

CVC did not learn the actual confirmation hearing date until August 23, 2011, at the earliest. On that date, just one week before the confirmation hearing, one of the debtors' bankruptcy attorneys claims she had a telephone call with CVC's counsel during which she relayed the hearing date and told him that the Ripon Property might be sold. She suggested that if CVC wished to assert any rights, under the ROFR or otherwise, it should do so before or at the hearing. CVC's counsel confirmed the call but could not remember whether he was informed of the hearing date. Even after this call, neither debtors' counsel nor anyone else served notice of the proceedings on CVC.

Ultimately, no one appeared for CVC at the confirmation hearing. And, none of the parties or counsel in attendance spoke up to inform the bankruptcy court that CVC had an interest in the property and had been asking questions about a potential sale. Oblivious to these lurking issues, the bankruptcy court proceeded as scheduled, and, hearing no objections, confirmed the plan and approved the sale. ADM closed on its purchase of the Ripon Property shortly thereafter.

### 3. Post-Bankruptcy State Court Litigation over the ROFR

The failure to address the ROFR in the bankruptcy case caused problems four years later. In May of 2015, ADM began negotiations to sell its Wisconsin graining business assets, including the Ripon Property, to United Cooperative (United). By September of 2015, ADM and United had negotiated an asset purchase agreement that included a $25 million purchase price that covered land, improvements, and some personal property. For accounting purposes, the parties allocated the purchase price between the real estate and the other assets, with $14,579,000 assigned to intangible rights and hard assets, and $10,421,000 allocated to real property (Ripon and three other parcels).

Upon learning of the pending sale, CVC contacted ADM to discuss its ROFR on the Ripon Property. After this contact, ADM and United attempted to separate the transaction into two sales, one covering just the Ripon Property and the other covering the remaining assets, including the other three parcels and business assets. On October 13, 2015, ADM and United signed a "Commercial Offer to Purchase" for the Ripon Property. The price was now $20 million for just the Ripon

Property. The parties' standard commercial real estate offer and acceptance form stated that United "understands that there is a Right of First Refusal owned by Country Visions Cooperative on the Property which is subject to this Offer. In the event Country Visions matches this Offer, [United] agrees that [ADM] is free to close on the transaction with Country Visions[.]" The agreement contained no other contingencies. The next day, on October 14, ADM forwarded the accepted offer to CVC in order to trigger the window for its exercise of the ROFR.

On October 15, 2015, ADM and United signed an Asset and Real Estate Purchase Agreement, transferring the other three properties and business assets (from all four properties) for $5 million. Of that $5 million purchase price, $2.8 million was allocated to real estate, with the remaining $2.2 million allocated to the personal property for all four locations. The end result of the two transactions was a collective sale of the same four properties and all related assets for the same $25 million purchase price previously agreed upon.

On October 16, 2015, the parties closed on the $5 million deal that had been signed the day before. The ROFR period on the Ripon Property deal expired with no matching offer from CVC, so the parties closed on that sale in early November. On November 11, 2015, CVC sued ADM and United in state court, seeking specific performance and damages under various theories, all of which revolved around allegations that the purported standalone nature of the Ripon Property transaction was a sham designed to impede the exercise of CVC's ROFR. *Country Visions Cooperative v. Archer-Daniels-Midland Co., et al.*, No. 2015CV546 (Wis. Cir. Ct., Fond du Lac Cnty.).

### 4. ADM's Return to the Bankruptcy Court

In response to CVC's state court litigation, ADM returned to the bankruptcy court, asking that the Olsens' bankruptcy cases be reopened. After the court agreed to reopen the cases, ADM filed its "Motion to Enforce the Confirmation Order Under Which It Purchased Property Free and Clear and Under Which It Is Not a Successor to the Debtors' Obligations." Through this motion, ADM asked the bankruptcy court to confirm that ADM had purchased the Ripon Property without assuming any obligations under the ROFR and to enjoin CVC "from taking any action to enforce or prosecute any claim" related to the ROFR.[2]

On February 17, 2017, the bankruptcy court denied ADM's requests. The court first

---

[2] ADM's request to enjoin the state court proceeding arguably ran afoul of the Anti-Injunction Act. 28 U.S.C. §2283. While this issue was not addressed in the bankruptcy court, the request likely fell within the relitigation exception as an effort to "protect or effectuate" the bankruptcy court's earlier confirmation order. Because the bankruptcy court declined (correctly) to enjoin the state court proceeding, the parties' failure to address the Anti-Injunction Act is of no moment.

concluded it had the authority to relieve CVC of the effects of the confirmation order under Rule 60(b)(4) if the order was based on a violation of due process. It then held that the failure of the parties in the bankruptcy proceeding to provide CVC with proper notice of the plan to sell the Ripon Property "free and clear" of CVC's rights, in violation of the Bankruptcy Code and Rules, violated due process. The bankruptcy court specifically found that the informal, last-minute notice that CVC received was insufficient to overcome the due process violation. The court also rejected ADM's claim that it was a bona fide purchaser because ADM had "actual and constructive" knowledge of the ROFR. The court thus concluded that its 2011 confirmation order was not effective to transfer the Ripon Property to ADM "free and clear" of CVC's interest.

ADM then appealed the bankruptcy court's decision to this court.

## STANDARD OF REVIEW

This court has jurisdiction over the appeal of a bankruptcy court's order under 28 U.S.C. §158(a). A bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo. *Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011). Mixed questions of law and fact are subject to de novo review. *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004). An appellate court will not reverse a court's interpretation of its own order unless it is a "clear abuse of discretion," because a court that issued an order is in the best position to interpret it. *In re Consolidated Indus.*, 360 F.3d 712, 716 (7th Cir. 2004). A bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

## ANALYSIS

ADM makes two arguments for reversal of the bankruptcy court's denial of ADM's "motion to enforce" the 2011 confirmation order.[3] First, ADM contends the bankruptcy court was wrong to

---
[3] ADM's "motion to enforce" the confirmation order is procedurally odd. The Federal Rules do not provide for a "motion to enforce" an earlier court order. A party aggrieved by another party's violation of a court order typically seeks an order to show cause or files a motion for contempt. Perhaps ADM did not file a contempt motion because, as the record establishes, CVC was not a party to the initial bankruptcy court proceedings and, therefore, could not be subject to a contempt order. *In re Stebbins*, 293 B.R. 113, 115 (Bankr. W.D.N.Y. 2003) (recognizing for nonparties to be held in civil contempt, must establish: (1) they had relationship of privity with party named in court order; (2) they had knowledge of order; and (3) they acted affirmatively to cause or facilitate violation of order); *see also Spallone v. United States*, 493 U.S. 265, 274 (1990) (concluding district court improperly imposed sanctions on council members that had never been made party to action). Adding to the procedural quagmire, ADM's motion to enforce was in essence a request for a declaration of ADM's rights under the confirmation order and a request for an injunction, but the Bankruptcy Rules require the filing of an adversary proceeding to obtain both of these forms of relief. Fed. R. Bankr. P. 7001(7), (9). In a case rife with disregard for procedure, ADM ignored this requirement. No one has raised this issue, however, and, it is waived. *Cf. In re Kutrubis*, 550 F. App'x 306, 310 (7th Cir. 2013) ("Because [appellant] neglected to raise this issue at the first available opportunity, the district court made no error in determining that he could not raise it on appeal.").

conclude that the failure to serve CVC with the required notices (of the Olsens' bankruptcy case, proposed chapter 11 plan, and the plan confirmation hearing) rendered the plan confirmation order non-binding on CVC.  Second, ADM argues that even if CVC had received no notice of the bankruptcy case or sale, Bankruptcy Code section 363(m) extinguished CVC's right of first refusal because ADM was a "good faith" purchaser.  Neither argument warrants reversal of the bankruptcy court's decision.

### A. The Bankruptcy Court Did Not Err in Refusing to Hold CVC Bound by an Order Resulting from a Procedurally Flawed Proceeding to Which CVC Was Not Made a Party.

ADM's lead argument is that the bankruptcy court erred in refusing to enforce its confirmation order against CVC on due process grounds.  ADM insists that because CVC received "actual notice" of the confirmation hearing, CVC's right to due process could not have been violated, regardless of the many procedural violations that took place at confirmation.  This attempt to shift responsibility from ADM (and others) to CVC reflects a fundamental misunderstanding of both the importance of bankruptcy procedure and due process.

ADM purchased the Ripon Property pursuant to the Creditors' Second Amended Plan, which provided for the sale of the property under 11 U.S.C. §363.  The Bankruptcy Code and Rules allow for such sales "outside the ordinary course" of the debtors' business, but only upon 21 days' notice.  11 U.S.C. §363; Fed. R. Bankr. P. 2002(a)(2), 6004(a).  If authorization is sought to sell the property "free and clear" of all interests under section 363(f), as the Second Amended Plan contemplated, the motion must also be served on all "parties who have liens or other interests in the property to be sold" in the same "manner provided for service of a summons and complaint."  *See* Fed. R. Bankr. P. 6004(c), 9014(b).  The notice must include the hearing date and the objection deadline.  Fed. R. Bankr. P. 6004(c).  If a public sale is proposed, the notice must state the time and place of the sale; if a private sale is proposed, the notice must provide the terms and conditions.  Fed. R. Bankr. P. 2002(c)(1).  The bankruptcy court can reduce or limit these requirements "for cause."  Fed. R. Bankr. P. 2002(a)(2).

Under the Bankruptcy Code and Rules, this is the "process" to which a party with an interest in property is "due" before it can be deprived of its property rights in a sale "free and clear."  None of these rules was complied with here – ADM and the other parties to the confirmation proceedings utterly disregarded the procedural protections necessary to strip CVC of its interest in the Ripon Property.  Even worse, the parties' neglect for procedure led to the bankruptcy court never having

personal jurisdiction over CVC before the confirmation hearing.

Bankruptcy Rule 7004(f) allows for broad personal jurisdiction over parties with interests in a bankruptcy proceeding, but only if service is made consistent with the terms of the Rule. At the time of the confirmation hearing, CVC had not been served with *any* notice related to the Olsens' bankruptcy cases. It was thus never brought within the court's personal jurisdiction. As the Supreme Court explained nearly 150 years ago in *Earle v. McVeigh*:

> Standard authorities lay down the rule, that, in order to give any binding effect to a judgment, it is essential that the court should have jurisdiction of the person and the subject-matter; and it is equally clear that the want of jurisdiction is a matter that may always be set up against a judgment when sought to be enforced, or where any benefit is claimed under it, as the want of jurisdiction makes it utterly void and unavailable for any purpose.

91 U.S. 503, 507 (1875). Although the bankruptcy court did not rely on its lack of jurisdiction over CVC, the absence of jurisdiction is itself a sufficient ground to affirm the bankruptcy court's ruling.

Moreover, the bankruptcy court was correct in its due process analysis. The procedural lapses here were immense. No party to the bankruptcy, including ADM, provided CVC with the higher form of notice (in the manner required "for service of a summons and complaint") necessary for a proposed sale "free and clear" under section 363(f) and Rules 6004(c) and 9014(b). The absence of this higher notice was not a trifling error. Section 363(f) only authorizes a bankruptcy court to approve a sale "free and clear" if one of five statutory conditions is met. One of the conditions commonly relied upon is the consent of the entities holding interests in the property. *See* 11 U.S.C. §363(f)(2). Under the Seventh Circuit's decision in *FutureSource LLC v. Reuters Ltd.*, this consent can be demonstrated by the lack of objection, "*provided of course there is notice*." 312 F.3d 281, 285 (7th Cir. 2002) (italics added). Here, the bankruptcy court confirmed the plan, and approved the sale of the Ripon Property "free and clear," based on the absence of objections and the assumption that all interested parties had received proper service and consented to the sale. This erroneous assumption arose only because ADM and the other parties at the confirmation hearing did not apprise the bankruptcy court of CVC, its interest in the Ripon Property, and their failure to effectuate proper service. The procedural violations, coupled with the stunning lack of candor with the bankruptcy court, tainted the confirmation hearing and the resulting confirmation order. The bankruptcy court was correct in concluding that CVC did not receive the process it was Constitutionally due and was not bound by the confirmation order.

As a sophisticated corporate entity, with top-shelf counsel, ADM has only itself to blame for

this result. It proceeded with an acquisition from a bankruptcy estate of real property that was subject to a publicly recorded interest – the ROFR – without ensuring compliance with basic notice and service requirements. While ADM did not itself propose or serve the Creditors' Second Amended Plan, it was heavily interested in confirmation and its counsel received electronic notice of the service documents. As the stalking horse purchaser of property under a proposed sale "free and clear," ADM had a responsibility to ensure compliance with the Bankruptcy Code and Rules if it wanted to be sure it was taking clean title. The bankruptcy court aptly concluded: "ADM's attempt to paint CVC as the party who knew about and ignored the sale is incongruous. It appears that ADM knew about CVC's interest in the Ripon Property before the sale, but ADM chose not to ensure that CVC's interest was dealt with in the sale." (Memorandum Decision and Order, ECF No. 3-2 at 10.)

ADM cites the Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), and the Seventh Circuit's decision in *In re Pence*, 905 F.2d 1107 (7th Cir. 1990), for the proposition that these procedural failings can be wiped clean because CVC received "actual notice" of the potential sale. But neither *Espinosa* nor *Pence* involved an attempt to bind a party that was not brought within the bankruptcy court's jurisdiction. And neither case stands for the broad proposition that *some* informal notice *always* satisfies due process.

In *Espinosa*, a student loan creditor sought relief from a bankruptcy court order confirming a chapter 13 plan that provided for the discharge of student loan debts. The bankruptcy court had confirmed the plan even though the debtor had not filed an adversary proceeding or obtained an "undue hardship" ruling, both prerequisites for the discharge of a student loan debt. The Supreme Court acknowledged the debtor had not followed the proper procedure, and thus the bankruptcy court should not have confirmed the plan. But the Court nevertheless held the creditor was bound by the confirmation order, a final judgment from which the creditor had not appealed. 559 U.S. at 269. In so ruling, the Court rejected the creditor's attempt to challenge the confirmation order on due process grounds. *Id.* at 272. The Court explained that because the creditor had received notice of the bankruptcy filing and the proposed plan, including the provision discharging the student loan debts, and was thus a party to the confirmation proceeding, its failure to object to and appeal from the confirmation order bound it to the order's terms. *Id.* at 276. The Court specifically noted that the creditor had filed a proof of claim and submitted itself to the court's jurisdiction. *Id.* at 275.

This case is unlike *Espinosa* in several material respects. First, unlike the creditor in *Espinoza*, CVC was not subject to the bankruptcy court's jurisdiction. It was never properly served with any notice and took no steps to submit itself to that jurisdiction. This makes the resulting order

not binding against it. *See Earle*, 91 U.S. at 507; *Philos Techs., Inc. v. Philos & D, Inc*., 645 F.3d 851, 854-55 (7th Cir. 2011) ("A judgment entered against a defendant over whom the court had no jurisdiction is void, and no court has the discretion to refuse to vacate that judgment once it recognizes its lack of jurisdiction."). Second, the student loan creditor in *Espinosa* received formal notice of a bankruptcy proceeding affecting its rights, only to then sit back and watch, without objection, as the bankruptcy court mistakenly deviated from proper procedure and entered a final order, which the creditor then failed to appeal. CVC cannot be faulted for failing to object to or appeal from the confirmation order; not having been made a party, it had no standing to object or appeal. *See Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (holding "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment"). ADM cites no law for the proposition that CVC was required to intervene, make itself a party, and affirmatively submit itself to the bankruptcy court's jurisdiction. Third, as discussed in detail above, the number and level of procedural violations inflicted upon CVC dwarfs the procedural deficiency in *Espinosa*. CVC received no formal notice of the Olsen's bankruptcy case or the proposed plan, and, given the proposed sale free and clear, the Bankruptcy Rules required an even higher level of notice.

While the Supreme Court held that actual notice was sufficient to satisfy the creditor's due process rights on the facts in *Espinosa*, it did not hold, as ADM suggests, that actual notice is sufficient to satisfy due process in all contexts. Whether notice is sufficient to satisfy due process depends on the circumstances. *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950) (notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). The differences in the circumstances and scope of the procedural failures between this case and *Espinosa* are both substantial and fundamental. *Espinosa* does not, as ADM suggests, provide a blank check to disregard procedure, especially procedure enacted for the protection of third parties' property rights, so long as the third party receives some minimal notice.

*In re Pence* also involved an after-the-fact challenge to a confirmation order. In *Pence*, a debtor's confirmed chapter 13 plan provided that a mortgage creditor would release its mortgage on the debtor's residence in exchange for the creditor's receipt of other property, a parcel of business real estate. When the substituted collateral turned out to be far less valuable than anticipated, the creditor tried to challenge the confirmation order, claiming its original lien survived because the creditor had not received formal written notice of the confirmation hearing. The bankruptcy court rejected the challenge, concluding that the creditor had in fact received notice and was thus bound

by the confirmed plan. 905 F.2d at 1110. The Seventh Circuit affirmed, concluding first that the record supported the lower court's finding that the creditor had received notice of the hearing. *Id*. at 1109. The court of appeals then went further, noting that even if the creditor had not received formal notice of the hearing, it was still bound by the confirmation order. The Seventh Circuit observed that "[d]ue process does not *always* require formal, written notice of court proceedings." *Id*. (italics added). Rather, in some instances, "informal actual notice will suffice." *Id*. As a "sophisticated and organized" entity, with knowledge of the debtor's bankruptcy petition, the mortgage creditor "should have known [under the Bankruptcy Rules] that a reorganization plan would be filed within fifteen days of the petition." *Id*.

This case is very different than *Pence*. Like the student loan creditor in *Espinosa*, the mortgage creditor in *Pence* had received notice of the debtor's bankruptcy petition. As a result of this notice, the creditor knew or should have known that a plan would be filed shortly that could affect its rights and was "not entitled to stick its head in the sand" and avoid participating in the impending confirmation hearing. *Id*. In contrast, CVC was not on the service list and did not receive notice of the Olsens' bankruptcy petitions when they were filed. Nor was CVC served with any notice or other process related to plan confirmation or the section 363(f) sale. And, as with *Espinosa*, the differences in the procedural failings and in the actual notice received are enormous. The notice CVC received also fell far short of curing the procedural lapses. The mortgage creditor in *Pence* had received notice of the debtor's petition and thus had, *at the very least*, 41 days' notice that the court might confirm a plan that modified its rights.[4] Here, CVC had at most seven-days' notice before the confirmation hearing and sale. In these circumstances, the bankruptcy court did not err in finding that such minimal, informal notice did not provide CVC with the requisite information, time, or opportunity to protect its interest. *Cf. Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'"); *Mullane,* 339 U.S. at 314 (to satisfy constitutional due process, litigants must receive "notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

---

[4] Under section 1324(b), a chapter 13 confirmation hearing cannot be held earlier than 20 days after the section 341 meeting of creditors, which itself requires notice of no fewer than 21 days after the order for relief, *see* Fed. R. Bankr. P. 2003(a).

## B. The Bankruptcy Court Correctly Concluded that ADM Is Not A Good Faith Purchaser.

ADM's second argument on appeal rests on the contention that ADM was a "good faith" or "bona fide" purchaser[5] of the Ripon Property and thus took title free and clear of CVC's ROFR in reliance upon the bankruptcy court's confirmation order. The bona fide purchaser doctrine provides an exception to the general rule of derivative title. It allows a party who buys property in good faith and without knowledge of defects in title to take and retain good title to the property, notwithstanding later-discovered defects. 92A C.J.S. *Vendor and Purchaser* §580 (Feb. 2021 update); *see also* Wis. Stat. §706.08(1)(a). Because the Ripon Property was part of the Olsens' bankruptcy estates, the bankruptcy court had *in rem* jurisdiction over it, and ADM likely would be entitled to retain clean title to the Ripon Property notwithstanding defects in the bankruptcy court proceedings, *if* it was a bona fide purchaser. But the bankruptcy court correctly ruled that ADM cannot claim bona fide purchaser status as to CVC and the Ripon Property.

ADM's primary support for its bona fide purchaser argument comes from the Seventh Circuit's decision in *In re Edwards*, 962 F.2d 641 (7th Cir. 1992). *Edwards* involved a *post hoc* attempt to challenge a judicially approved sale of real estate "free and clear" under section 363(f). A creditor with a second mortgage on the property sought to undo the sale order on grounds that it had not received proper notice of the sale due to an addressing error in the notice. The bankruptcy court rejected the challenge and the district court affirmed. On appeal, the Seventh Circuit agreed, concluding that the order approving the sale was binding and could not be voided because it was undisputed that the buyer of the property at the bankruptcy sale was a "bona fide" or "good faith" purchaser. *Id.* at 643. The court of appeals emphasized the "strong policy of finality of bankruptcy sales" and a "strict rule in favor of the bona fide purchaser at the bankruptcy sale." *Id.* at 645-46. Citing section 363(m), which protects the validity of sales to good faith purchasers, even if a sale is reversed on appeal, the court of appeals explained that the buyer's good faith purchase of the property from the bankruptcy estate trumped the creditor's effort to reassert its second mortgage interest: "[i]f purchasers at judicially approved sales of property of a bankruptcy estate, and their lenders, cannot rely on the deed that they receive at the sale, it will be difficult to liquidate bankrupt estates at positive prices." *Id.* at 643. Noting the competing property interests at stake, the court of appeals sided with

---

[5] While the Bankruptcy Code primarily reserves the term "bona fide" to refer to a purchaser and "good faith" to refer to various conduct, the terms are often used interchangeably in the Code, case law, and commentary. *See* Black's Law Dictionary (11th ed. 2019) ("bona fide purchaser" also termed "good-faith purchaser").

the rights of the good faith purchaser, emphasizing that the "doctrine of bona fide purchasers does not violate the due process clause." *Id*. at 645.

ADM's attempt to fit itself within the holding in *Edwards* ignores key differences between that case and this one. Most fundamentally, ADM's invocation of *Edwards* fails because the record establishes that ADM is *not* an innocent good faith or bona fide purchaser. CVC's ROFR was properly and timely recorded in the appropriate land records, putting ADM on constructive notice of CVC's interest in the property. Indeed, the record shows that ADM was in physical possession of a title report showing CVC's interest. ADM also knew or should have known that CDC was not included on the service list for the Second Amended Plan or the notices for the confirmation hearing or the auction. Given this knowledge, the bankruptcy court correctly determined that ADM could not invoke the good faith purchaser defense. *See Kordecki v. Rizzo*, 106 Wis. 2d 713, 719, 317 N.W.2d 479 (1982) (noting purchaser in good faith is "deemed to have examined the record and to have notice of the contents of all instruments in the chain of title and of the contents of instruments referred to in an instrument in the chain of title"); *Fox Valley Fin., Inc. v. Gholston*, 2019 WI App 21, ¶5, 386 Wis. 2d 629, 927 N.W.2d 927 ("A good faith purchaser is one who takes property without actual or constructive notice of adverse claims."); *Bank of New York Mellon Tr. Co. v. Wittman*, No. 12-C-846-WCG, 2013 WL 173801, at *3 (E.D. Wis. Jan. 16, 2013) (applying Wisconsin law and noting "a purchaser [in good faith] is bound by not only his actual knowledge of other claims to the property, but also by what he should have known").

CVC also sits in a much different position than the creditor in *Edwards*. Unlike CVC, the creditor challenging the sale in *Edwards* had known of the bankruptcy case for more than two years before the sale, and the appellate court questioned the creditor's "diligence and zeal" in protecting its interest. 962 F.2d at 645. Here, CVC had at best seven days' informal notice of a confirmation hearing. In this situation, ADM is the entity with questionable diligence and zeal. Despite being a stalking horse bidder in possession of documents showing the Ripon Property was the subject of an ROFR, ADM did not raise this fact with the bankruptcy court at the confirmation hearing. Instead, it waited another four years, until the ROFR it had initially ignored threatened to complicate its later re-sale of the property. As the bankruptcy court commented, "ADM rather than CVC may more aptly be characterized as the ostrich in this case." (Memorandum Decision and Order, ECF No. 3-2 at 9.)

## CONCLUSION AND ORDER

The bankruptcy court did not base its decision on an erroneous view of the law or clearly erroneous factual findings. In a thorough decision, the bankruptcy court considered the factual circumstances surrounding the controversy and examined the relevant statutory authority and legal precedent. The bankruptcy court recognized and carefully balanced the competing principles of sale finality and due process, and this Court finds no error in its decision. For the reasons stated above, the bankruptcy court's decision is affirmed.

SO ORDERED at Milwaukee, Wisconsin this 19th day of February, 2021.

s/ *Brett H. Ludwig*_____
Brett H. Ludwig
United States District Judge
